Jess Lee Crump v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-277-CR

JESS LEE CRUMP, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362
ND
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Jess Lee Crump, Jr. of the aggravated sexual assault of his granddaughter, W.M.C.  The trial court sentenced Appellant to forty years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  In three issues, Appellant challenges the factual sufficiency of the evidence, contends that the jury charge at the guilt-innocence phase is fundamentally erroneous, and claims ineffective assistance of counsel.  Because we hold that the evidence is factually sufficient, that the jury charge contains no reversible error, and that Appellant failed to prove his claim of ineffective assistance, we affirm the trial court's judgment.

In his first issue, Appellant contends that the evidence is factually insufficient, basing his argument on the complainant's lack of credibility.  
At trial, Appellant also argued that W.M.C. was not credible, contending, among other things, that she should have known whether she was penetrated by “an adult with a penis enlargement.”  On appeal, Appellant argues that there was evidence that (1) he was physically unable to have sex with W.M.C. due to his neck surgery in August 2002, (2) he was never alone in the house with W.M.C., and (3) she had a reputation for untruthfulness, as exemplified, he argues, by the differences in her outcry statement and trial testimony and the State's failure to produce the vibrator W.M.C. referred to in her testimony.
 
W.M.C. testified about two sexual incidents that occurred with Appellant when she was ten years old.
  W.M.C. testified that the first incident occurred in July 2002 when she spent three weeks at her grandparents’ house.  W.M.C. stated that Appellant asked her if she knew where the penis went and told her to pull down her panties.  According to W.M.C., after she pulled down her panties, Appellant touched her vagina,
(footnote: 2) which she later testified is the term she uses to describe her private parts.  W.M.C. did not tell anyone about the incident and later returned to her mother’s house.

W.M.C. further testified that a second incident, the charged offense, occurred in October 2002 when she returned to stay with her grandparents.  W.M.C. stated that while she was alone in her room, Appellant, naked, entered the room and began to discuss sex.  W.M.C. said that Appellant asked her to remove her panties and began to yell at her when she refused.  W.M.C. then removed her panties because she was scared.  W.M.C. further stated that Appellant then pushed her down on the bed and began to have intercourse with her.  W.M.C. testified, however, that Appellant put his penis on her vagina but that she did not know if it was actually inside her.  After rubbing on her for a couple of minutes, Appellant eventually ejaculated into his hand and then went to the sink to wash his hand.  W.M.C. then followed Appellant into his bedroom, where, W.M.C. testified, Appellant pulled out a vibrator, placed a condom and Vaseline on it, and informed W.M.C. that in the future she needed to use the vibrator.  W.M.C. then testified that Appellant told her that he had gotten a penis enlargement.  W.M.C. testified that she left the room and did not tell anyone until June 2003 because she was scared.  
No medical evidence confirmed the sexual assault.

As Appellant points out, there was evidence that he had cervical spinal cord and neck problems and had undergone surgery in August 2002.  His wife testified about his physical limitations.  Although there was testimony that Appellant’s physical state was extremely bad, that he was in constant, severe pain, and that he could only get into and out of one chair in the house without assistance, the treating doctors testified that Appellant could take care of his activities of daily living and that the surgery would not have prevented him from having sexual intercourse.  Appellant's wife denied that she owned a vibrator such as the one described by W.M.C. but admitted that Appellant had had penis enlargement surgery.

Appellant's arguments are based on the credibility of the complainant, but as the reviewing court, we must give deference to the fact finder’s determinations of credibility.
(footnote: 3)  As the State points out, the jury heard the evidence and weighed the credibility of the witnesses whose testimony conflicted, reconciling the conflicts in favor of guilt.
(footnote: 4)  Applying the appropriate standard of review,
(footnote: 5) we cannot say that the evidence is factually insufficient to support the jury’s verdict.  We overrule Appellant’s first issue.

In his third issue, Appellant complains of jury charge error.  The indictment charges that Appellant did “intentionally or knowingly cause the sexual organ of [W.M.C.], a child younger than 14 years of age who was not the said spouse of [Appellant], to contact or penetrate the sexual organ of [Appellant].”  The jury instruction tracked the indictment.  Appellant argues that the two theories of aggravated sexual assault set out in the indictment and in the jury instruction include an anatomically possible and an anatomically impossible manner of committing the offense.  Appellant asserts that there is no evidence that he caused W.M.C.’s sexual organ to penetrate his sexual organ.  The State concedes this argument.

As the State points out, however, it is not necessary for the evidence to support the penetration charge when the evidence is sufficient to support the “contact” charge.  The State relies on 
Kitchens v. State
, in which the Texas Court of Criminal Appeals held that when alternative theories of committing the same offense are submitted to a jury in the disjunctive, it is appropriate for the jury to return a general verdict if evidence is sufficient to support a finding under any of the theories submitted.
(footnote: 6)  Consequently, we hold that the application portion of the charge is proper.

Appellant also complains of the abstract definition contained in the jury instruction.  The abstract definition states, “Our law provides that a person commits sexual assault if the person intentionally or knowingly causes the penetration of the female sexual organ of a child by any means.”  The State concedes that the abstract definition is error because it defines a method of committing aggravated sexual assault of a child with which Appellant was not charged in the indictment.
(footnote: 7)  Appellant did not object to the abstract definition.  
Because Appellant did not object at trial to the error in the court’s charge, we must decide whether the error was so egregious and created such harm that Appellant did not have a fair and impartial trial—in short, that “egregious harm” has occurred.
(footnote: 8)
 In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”
(footnote: 9)  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.
(footnote: 10)  Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.
(footnote: 11)
 Based on our review of the record, we hold that Appellant did not suffer egregious harm.  The abstract definition constitutes merely a superfluous definition.  At the same time, the jury charge contains no definition of sexual assault as alleged in the indictment.  That is, there is no abstract definition of contact or penetration of the male sexual organ by the female sexual organ.  The contact theory of aggravated sexual assault, however, is adequately defined in the application portion of the jury charge.  Additionally, it is the only theory alleged in the indictment that is supported by the evidence.  Because the jury charge contains an adequate definition of the contact theory of aggravated sexual assault and, as we have already held, the evidence supports Appellant’s conviction, Appellant has not suffered egregious harm.
(footnote: 12)  Because Appellant did not suffer egregious harm from the error in the jury charge, we overrule his third issue.

In his second issue, Appellant argues that his trial counsel rendered ineffective assistance of counsel by neither requesting that the jury assess punishment nor filing an application for community supervision.  Our review of the record shows that Appellant’s trial counsel asked Appellant to testify before trial that he was eligible for community supervision and asked the court to so find.  Clearly, Appellant’s trial counsel believed that Appellant could receive community supervision from the trial judge.  But sexual assault of a child under the age of fourteen is a “3g” offense.
(footnote: 13)  Consequently, Appellant was not entitled to receive community supervision from the trial court.
(footnote: 14)  Only a jury could have granted Appellant community supervision.  Appellant argues that there was no possible trial strategy in electing to have punishment assessed by the trial court.  We disagree.  We do not know whether trial counsel anticipated that the evidence would show that Appellant was guilty only of a lesser included offense falling outside the scope of section 3g.
(footnote: 15)  But it is not our job to speculate on what the possible trial strategy, if any, could have been. Appellant did not file a motion for new trial.  
A record sufficient to show ineffective assistance of counsel can rarely be developed on direct appeal.  The Texas Court of Criminal Appeals has pointed out that an application for a writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims.
(footnote: 16)  We overrule Appellant’s second issue.

Having overruled Appellant’s three issues, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 28, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See Tyler v. State
, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.) (“[T]he vagina is an internal organ.  It is a canal that leads from the uterus of a female mammal to the external orifice of the genital canal.”) (citations omitted).

3:
Zuniga v. State
, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004).

4:
See Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

5:
See Zuniga
, 144 S.W.3d at 481-82, 484-87
; 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003);
 
Cain
, 958 S.W.2d at 407.

6:
Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App.), 
cert. denied
, 504 U.S. 958 (1992).

7:
See
 
Tex. Penal Code Ann.
 § 22.021(a)(1)(B)(i), (iii) (Vernon 2004-05).

8:
See Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g);
 see also
 Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

9:
Almanza
, 686 S.W.2d at 171; 
see generally Hutch
, 922 S.W.2d at 172-74.

10:
Almanza
, 686 S.W.2d at 174.

11:
Ellison v. State
, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); 
Hutch
, 922 S.W.2d at 171.

12:
See Meanes v. State
, 668 S.W.2d 366, 374-75 (Tex. Crim. App.), 
cert. denied
, 466 U.S. 945 (1984).

13:
See
 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(1)(E) (Vernon Supp. 2004-05).

14:
See id.

15:
See id.
 § 3g(a).

16:
Rylander v. State
, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); 
see also Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
 Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (all providing standard of review for ineffective assistance claims)
.