COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-277-CR
  
  
JESS 
LEE CRUMP, JR.                                                           APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 362ND DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury convicted Appellant Jess Lee Crump, Jr. of the aggravated sexual assault of 
his granddaughter, W.M.C. The trial court sentenced Appellant to forty years’ 
confinement in the Institutional Division of the Texas Department of Criminal 
Justice. In three issues, Appellant challenges the factual sufficiency of the 
evidence, contends that the jury charge at the guilt-innocence phase is 
fundamentally erroneous, and claims ineffective assistance of counsel. Because 
we hold that the evidence is factually sufficient, that the jury charge contains 
no reversible error, and that Appellant failed to prove his claim of ineffective 
assistance, we affirm the trial court's judgment.
        In 
his first issue, Appellant contends that the evidence is factually insufficient, 
basing his argument on the complainant's lack of credibility. At trial, 
Appellant also argued that W.M.C. was not credible, contending, among other 
things, that she should have known whether she was penetrated by “an adult 
with a penis enlargement.” On appeal, Appellant argues that there was evidence 
that (1) he was physically unable to have sex with W.M.C. due to his neck 
surgery in August 2002, (2) he was never alone in the house with W.M.C., and (3) 
she had a reputation for untruthfulness, as exemplified, he argues, by the 
differences in her outcry statement and trial testimony and the State's failure 
to produce the vibrator W.M.C. referred to in her testimony.
        W.M.C. 
testified about two sexual incidents that occurred with Appellant when she was 
ten years old. W.M.C. testified that the first incident occurred in July 2002 
when she spent three weeks at her grandparents’ house. W.M.C. stated that 
Appellant asked her if she knew where the penis went and told her to pull down 
her panties. According to W.M.C., after she pulled down her panties, Appellant 
touched her vagina,[2] which she later testified is 
the term she uses to describe her private parts. W.M.C. did not tell anyone 
about the incident and later returned to her mother’s house.
        W.M.C. 
further testified that a second incident, the charged offense, occurred in 
October 2002 when she returned to stay with her grandparents. W.M.C. stated that 
while she was alone in her room, Appellant, naked, entered the room and began to 
discuss sex. W.M.C. said that Appellant asked her to remove her panties and 
began to yell at her when she refused. W.M.C. then removed her panties because 
she was scared. W.M.C. further stated that Appellant then pushed her down on the 
bed and began to have intercourse with her. W.M.C. testified, however, that 
Appellant put his penis on her vagina but that she did not know if it was 
actually inside her. After rubbing on her for a couple of minutes, Appellant 
eventually ejaculated into his hand and then went to the sink to wash his hand. 
W.M.C. then followed Appellant into his bedroom, where, W.M.C. testified, 
Appellant pulled out a vibrator, placed a condom and Vaseline on it, and 
informed W.M.C. that in the future she needed to use the vibrator. W.M.C. then 
testified that Appellant told her that he had gotten a penis enlargement. W.M.C. 
testified that she left the room and did not tell anyone until June 2003 because 
she was scared. No medical evidence confirmed the sexual assault.
        As 
Appellant points out, there was evidence that he had cervical spinal cord and 
neck problems and had undergone surgery in August 2002. His wife testified about 
his physical limitations. Although there was testimony that Appellant’s 
physical state was extremely bad, that he was in constant, severe pain, and that 
he could only get into and out of one chair in the house without assistance, the 
treating doctors testified that Appellant could take care of his activities of 
daily living and that the surgery would not have prevented him from having 
sexual intercourse. Appellant's wife denied that she owned a vibrator such as 
the one described by W.M.C. but admitted that Appellant had had penis 
enlargement surgery.
        Appellant's 
arguments are based on the credibility of the complainant, but as the reviewing 
court, we must give deference to the fact finder’s determinations of 
credibility.[3]  As the State points out, the 
jury heard the evidence and weighed the credibility of the witnesses whose 
testimony conflicted, reconciling the conflicts in favor of guilt.[4]  Applying the appropriate standard of review,[5] we cannot say that the evidence is factually insufficient 
to support the jury’s verdict.  We overrule Appellant’s first issue.
        In 
his third issue, Appellant complains of jury charge error.  The indictment 
charges that Appellant did “intentionally or knowingly cause the sexual organ 
of [W.M.C.], a child younger than 14 years of age who was not the said spouse of 
[Appellant], to contact or penetrate the sexual organ of [Appellant].” The 
jury instruction tracked the indictment.  Appellant argues that the two 
theories of aggravated sexual assault set out in the indictment and in the jury 
instruction include an anatomically possible and an anatomically impossible 
manner of committing the offense.  Appellant asserts that there is no 
evidence that he caused W.M.C.’s sexual organ to penetrate his sexual 
organ.  The State concedes this argument.
        As 
the State points out, however, it is not necessary for the evidence to support 
the penetration charge when the evidence is sufficient to support the 
“contact” charge.  The State relies on Kitchens v. State, in 
which the Texas Court of Criminal Appeals held that when alternative theories of 
committing the same offense are submitted to a jury in the disjunctive, it is 
appropriate for the jury to return a general verdict if evidence is sufficient 
to support a finding under any of the theories submitted.[6]  
Consequently, we hold that the application portion of the charge is proper.
        Appellant 
also complains of the abstract definition contained in the jury instruction. The 
abstract definition states, “Our law provides that a person commits sexual 
assault if the person intentionally or knowingly causes the penetration of the 
female sexual organ of a child by any means.”  The State concedes that 
the abstract definition is error because it defines a method of committing 
aggravated sexual assault of a child with which Appellant was not charged in the 
indictment.[7]  Appellant did not object to the 
abstract definition.  Because Appellant did not object at trial to the 
error in the court’s charge, we must decide whether the error was so egregious 
and created such harm that Appellant did not have a fair and impartial 
trial—in short, that “egregious harm” has occurred.[8]
        In 
making this determination, “the actual degree of harm must be assayed in light 
of the entire jury charge, the state of the evidence, including the contested 
issues and weight of probative evidence, the argument of counsel and any other 
relevant information revealed by the record of the trial as a whole.”[9]  The purpose of this review is to illuminate the 
actual, not just theoretical, harm to the accused.[10]  
Egregious harm is a difficult standard to prove and must be determined on a 
case-by-case basis.[11]
        Based 
on our review of the record, we hold that Appellant did not suffer egregious 
harm. The abstract definition constitutes merely a superfluous definition.  
At the same time, the jury charge contains no definition of sexual assault as 
alleged in the indictment.  That is, there is no abstract definition of 
contact or penetration of the male sexual organ by the female sexual 
organ.  The contact theory of aggravated sexual assault, however, is 
adequately defined in the application portion of the jury charge.  
Additionally, it is the only theory alleged in the indictment that is supported 
by the evidence.  Because the jury charge contains an adequate definition 
of the contact theory of aggravated sexual assault and, as we have already held, 
the evidence supports Appellant’s conviction, Appellant has not suffered 
egregious harm.[12]  Because Appellant did not 
suffer egregious harm from the error in the jury charge, we overrule his third 
issue.
        In 
his second issue, Appellant argues that his trial counsel rendered ineffective 
assistance of counsel by neither requesting that the jury assess punishment nor 
filing an application for community supervision.  Our review of the record 
shows that Appellant’s trial counsel asked Appellant to testify before trial 
that he was eligible for community supervision and asked the court to so 
find.  Clearly, Appellant’s trial counsel believed that Appellant could 
receive community supervision from the trial judge.  But sexual assault of 
a child under the age of fourteen is a “3g” offense.[13]  
Consequently, Appellant was not entitled to receive community supervision from 
the trial court.[14]  Only a jury could have 
granted Appellant community supervision.  Appellant argues that there was 
no possible trial strategy in electing to have punishment assessed by the trial 
court.  We disagree.  We do not know whether trial counsel anticipated 
that the evidence would show that Appellant was guilty only of a lesser included 
offense falling outside the scope of section 3g.[15]  
But it is not our job to speculate on what the possible trial strategy, if any, 
could have been.
        Appellant 
did not file a motion for new trial.  A record sufficient to show 
ineffective assistance of counsel can rarely be developed on direct 
appeal.  The Texas Court of Criminal Appeals has pointed out that an 
application for a writ of habeas corpus is the more appropriate vehicle to raise 
ineffective assistance of counsel claims.[16]  
We overrule Appellant’s second issue.
        Having 
overruled Appellant’s three issues, we affirm the trial court’s judgment.
  
   
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
    
 
PANEL 
A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 28, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
See Tyler v. State, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no 
pet.) (“[T]he vagina is an internal organ.  It is a canal that leads from 
the uterus of a female mammal to the external orifice of the genital canal.”) 
(citations omitted).
3.  
Zuniga v. State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004).
4.  
See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
5.  
See Zuniga, 144 S.W.3d at 481-82, 484-87; Sims v. State, 99 S.W.3d 
600, 603 (Tex. Crim. App. 2003); Cain, 958 S.W.2d at 407.
6.  
Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.), cert. denied, 
504 U.S. 958 (1992).
7.  
See Tex. Penal Code Ann. § 
22.021(a)(1)(B)(i), (iii) (Vernon 2004-05).
8.  
See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on 
reh’g); see also Tex. Code Crim. 
Proc. Ann. art. 36.19 (Vernon 1981); Hutch v. State, 922 S.W.2d 
166, 171 (Tex. Crim. App. 1996).
9.  
Almanza, 686 S.W.2d at 171; see generally Hutch, 922 S.W.2d at 
172-74.
10.  
Almanza, 686 S.W.2d at 174.
11.  
Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch, 
922 S.W.2d at 171.
12.  
See Meanes v. State, 668 S.W.2d 366, 374-75 (Tex. Crim. App.), cert. 
denied, 466 U.S. 945 (1984).
13.  
See Tex. Code Crim. Proc. Ann. 
art. 42.12, § 3g(a)(1)(E) (Vernon Supp. 2004-05).
14.  
See id.
15.  
See id. § 3g(a).
16.  
Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); see 
also Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 
(1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez 
v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (all providing standard 
of review for ineffective assistance claims).