**Lawrence Lee BUXTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69168.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 25, 1985.

Rehearing Denied Nov. 20, 1985.

Janet Seymour Morrow, court appointed on appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr., Don Smyth and Lyn McClellan, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(2). After finding appellant guilty, the jury returned affirmative findings to the special issues under Art. 37.071(b), V.A. C.C.P. Punishment was assessed at death.

Conviction was under an indictment which charged appellant with causing the death of Joel Slotnik by shooting him with a gun while appellant was in the course of committing or attempting to commit the offense of robbery.

In his second ground of error appellant contends "The evidence was insufficient as a matter of law to support the conviction for capital murder."

The State relied upon circumstantial evidence for conviction. Since there appears to be some question raised as to the stan-dard for review in such cases, we quote from our recent opinion in *McGoldrick v. State*, 682 S.W.2d 573 (Tex.Cr.App.1985):

"In reviewing the sufficiency of the evidence to sustain the conviction, we observe this Court has held that the standard for such review on appeal is the same for both direct and circumstantial evidence cases. *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (opinion on rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex.Cr.App.1983) (opinion on rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App.1983) (opinion on rehearing); *Carlsen v. State*, 654 S.W.2d 444 (Tex. Cr.App.1983). Further, the relevant standard is the one developed by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to wit 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

The Slotnik and Sternberg families were returning home from Yom Kippur services on the evening of September 19, 1980 when they stopped at a Safeway store on Fry Road. Joel Slotnik, his five-year-old son Aaron, and Mrs. Sternberg entered the store. Upon entering the store Sternberg testified that a man with a stocking mask over his face yelled "Hit the deck." After getting down on the floor, she observed that there were three masked men, two of whom were brandishing guns.

Pursuant to orders of one of the robbers, Patricia Jackson, an assistant store manager, gave one of the robbers currency from a cash register. Jackson observed one of the gunmen pointing a gun toward Slotnik. Slotnik was seated on the floor holding his five-year-old son who was standing. Mrs. Sternberg heard a robber tell Slotnik "You better get that kid down." The gunman then fired his pistol, hitting Slotnik in the neck. Slotnik died on September 23, 1980.

Two robbers exited the store and went to a vehicle described as a dark two-door Gen-

eral Motors automobile. They were followed by the third robber, the person who Mrs. Sternberg testified as being the person who fired the only shot.

Other members of the deceased's family had remained in their parked vehicle in front of the store. The deceased's wife, Linda Slotnik, testified she heard a noise and looked toward the doors of the store. She observed two masked men walk rapidly from the store. They were followed by a third man who pulled off his mask as he left the store. Mrs. Slotnik identified appellant in court as the man who pulled off his mask.

Lee Slotnik, a fourteen-year-old son, also remained in the family vehicle. He testified he heard the sound of a shot coming from inside the store. He also identified appellant as the third robber to leave the store.

John Larry Foster testified he had a conversation with appellant while he was in Houston sometime in late January or the first part of February, 1981. Appellant told him "he went out and pulled a robbery" at a grocery store and "this guy seen him when he was coming out and he hollered for the guy to stop and he didn't so he shot."

Appellant further related to Foster that he used "38 slugs" because they were "hard to be traced." Appellant laughed about the incident.

An autopsy revealed the cause of death to be a gunshot wound to the neck. A bullet was recovered during autopsy. C.E. Anderson, a firearms examiner for the Houston Police Department, testified that he had examined the bullet and "It's a .357 or a .38 caliber." Testimony from other witnesses reflected appellant had a General Motors car at the time in question.

The appellant appears to bottom his contention of insufficiency of the evidence on the following rule stated in *Walden v. State,* 579 S.W.2d 499 (Tex.Cr.App.1979):

"Where circumstantial evidence relied on by the prosecution is somewhat weak and where the record on appeal affirma-

tively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. *Schershel v. State,* Tex.Cr. App., 575 S.W.2d 548; *King v. State,* Tex.Cr.App., 396 S.W.2d 409; 24 Tex. Jur.2d 427, Evidence, Section 745."

Assuming arguendo, that the foregoing rule still has vitality, we find no merit in appellant's reliance on this rule. We do not find this to be a weak circumstantial case in light of the testimony of the witnesses at the scene nor do we find that appellant has demonstrated that there were other witnesses who could have cast additional light on the facts.

In applying the standard for review set forth in the *Carlsen* and *Wilson* line of cases, the exclusion of the reasonable hypotheses test continues to be utilized. As it was noted in rehearing in *Denby,* "if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding." 654 S.W.2d at 464. Bearing in mind the foregoing, we conclude that a rational trier of the facts could have found the essential elements of the instant crime proved beyond a reasonable doubt. We reject appellant's contention that the evidence was insufficient to support the conviction.

Appellant contends "the evidence was insufficient as a matter of law to support a yes answer to punishment question number one concerning the deliberateness of appellant's conduct."

The first question asked the jury at the punishment phase is "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Art. 37.071(b)(1), V.A.C.C.P.

The thrust of appellant's argument is that the jury would had to have believed that the appellant was the triggerman to find deliberateness, that the circumstantial evidence was insufficient in support of that proposition and the law of parties may not be applied to answering the special issues at the punishment stage of a capital trial.

Appellant relies on our case of *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984) and the United States Supreme Court's opinion in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

The court instructed the jury on the law of parties at the guilt stage of the trial only.

In *Green v. State*, supra, we stated:

"We addressed the law of parties issue in *Meanes v. State*, 668 S.W.2d 366 (Tex.Cr.App.1983). In *Meanes* we emphasized that the Supreme Court's decision in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) 'does not prevent, under all circumstances, imposition of the death penalty against *one convicted*, as a party, of capital murder. *Enmund* prohibits assessment of the death penalty against any defendant who did not kill, attempt to kill, or intend or contemplate that life would be taken.' *Meanes* at 375. We discussed the application of the law of parties to Art. 37.-071(b)(1) and stressed that the special issues themselves clearly focus the jury's attention on the individual defendant, and indeed must do so in order to give the individualized examination required under *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). While the law of parties can apply to *convict* an accused of capital murder, the death penalty may be imposed only by examination of the mitigating and aggravating circumstances concerning the *individual* defendant. *Lockett*, supra; *Woodson*, supra. This examination is performed in Texas through the special issues. *Enmund* clearly requires that the individual defendant be shown to be

culpable due to his own actions, intentions, and expectations and not those of his cohorts. *Id.* at 102 S.Ct. 3378." (Emphasis in original.)

Unlike *Enmund* where the defendant was the driver of the vehicle used in the robbery, the appellant was identified by the two witnesses as one of the three masked robbers who was in the store where the robbery and murder occurred and departed the store with a gun in his hand.

Their testimony, coupled with that of another witness, circumstantially identified appellant as the triggerman.

As at the guilt stage, we must review the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the State sustained the burden of proof beyond a reasonable doubt. We find that a rational trier of fact could have found that the evidence met this test in proving deliberateness of the conduct of the appellant in bringing about the death of the deceased. We further find that the evidence passes constitutional muster under *Enmund* and *Green*. The evidence was sufficient to support a "yes" answer to special issue number one at the punishment stage.

In his first ground of error appellant contends:

"THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS THE LINE–UP IDENTIFICATION AND THE IN–COURT IDENTIFICATION, BECAUSE THE TESTIMONY WAS NOT SHOWN TO BE RELIABLY INDEPENDENT OF THE PRETRIAL LINE–UP THAT WAS SO UNNECESSARILY SUGGESTIVE AND CONDUCIVE TO IRREPARABLE MISIDENTIFICATION AS TO DENY HIM DUE PROCESS OF LAW."

Appellant had counsel present at a lineup composed of appellant and five other black men. The lineup was conducted on August 14, 1981.

Mrs. Slotnik did not recognize appellant upon her first viewing of the lineup. She identified appellant upon viewing the lineup

a second time. She explained her inability to identify appellant the first time, "I was so upset ... the attorneys were hovering all over me and constantly asking, 'do you recognize' you know, would I know him when I see him and I couldn't take it after that."

When Lee Slotnik, who had been seated on the opposite side of the room from his mother, was removed from the viewing area he immediately identified appellant stating, "it was the first one, the one with the pink shirt and green britches."

Appellant attacks the lineup as suggestive in that out of the six men in the lineup there was only one black man other than appellant who was dark, the other man was six foot two and weighed 210 pounds. Appellant was five foot nine and weighed 206 pounds. Appellant reasons the functional size of the lineup was reduced from six to two. Appellant emphasizes this is of particular importance because the witnesses had described the man at the scene as very dark. Appellant appeared in the lineup in a pink shirt and green pants and young Slotnik identified appellant to the officers as the one in the pink shirt and green pants. The return of Mrs. Slotnik to the viewing room after not picking appellant initially is urged to be tantamount to a suggestion to Mrs. Slotnik that the guilty man is in the group.

The height range of the six men was from "five foot nine to six foot two" and that weights ranged from "one seventy five" to "two ten." Three of the men ranged in weight from "two hundred six pounds and two hundred ten pounds." There "were some people [in the lineup] that had on a bright shirt, look like Hawaiian shirt or beach shirt like that." Additional testimony elicited that there were two other black men with dark tone skin other than appellant.

■ While the better practice may be to get as many individuals as possible who fit the defendant's description, it· is not essential that all the individuals be identical; "neither due process nor common sense" requires such exactitude. *Herrera*

*v. State,* 682 S.W.2d 313 (Tex.Cr.App.1984); *Dickson v. State,* 492 S.W.2d 267 (Tex.Cr. App.1973). In addition, we find no other suggestive procedures utilized which constitute a violation of due process.

■ The appellant's next argument is based on the premise that the lineup was violative of constitutional guarantees. With this assumption, appellant argues that the State has failed to prove that the in-court identification is not the fruit of the earlier tainted identification process.

At the outset we reject the premise that the lineup was violative of "constitutional guarantees." Further, we find the in-court identification was shown to have an origin independent from the lineup. While it was nighttime, both Mrs. Slotnik and Lee Slotnik testified there was sufficient lighting for them to observe appellant's face. The physical description of the third man to leave the store fit the appellant. The in-court identification was positive. Lee Slotnik testified that if he had not seen appellant in the lineup he would have been able to identify him based on what he saw on the night of the crime stating, "If I live to be two hundred years, I'll be able to identify him at any time." Mrs. Slotnik was unequivocal about her in-court identification being based on what she saw on the night of September 19, 1980. We conclude (1) that the lineup was not violative of due process and (2) assuming arguendo, that the lineup was suggestive, the in-court identification was shown to have been independent of the lineup.

In his final ground of error appellant contends "It was reversible error to admit posed photographs purporting to recreate the eyewitness' ability to view the fleeing gunmen."

The ability of the witnesses to view the third robber as he left the store was challenged by appellant.

The State offered four posed still photographs. The predicate for the admission of the photographs was developed by testimony from Lee Slotnik, as follows:

"Q. ... Looking at each one of those photographs, do they truly and accurately depict what you saw on the night of September 19th, 1980, with regard to these factors: One, your position for—from where the vantage point of where the photo is taken; two, the lighting conditions that are portrayed in the photographs with his arms in certain positions, his feet in certain positions?

"A. Uh, yes, sir.

"Q. Is that with respect to each photograph, that if each photograph represents what you could see at some point in time?

"A. Uh, every single photograph depicts that."

The photographs were offered into evidence and appellant objected:

"MR. CROW: [counsel for appellant] Your Honor, I would renew my objection with reference to the predicate pertaining to the police officer that is portrayed in the photograph. I don't believe the proper predicate has yet to be laid in reference to the position of any person that was in these photographs with what he saw that evening."

The court's action in overruling the objection and admitting them into evidence gives rise to appellant's complaint.

The recreation in the photograph had a black police officer to portray appellant as he departed the store.

Appellant in his brief points to his cross-examination of the witness which reflected that the officer was "a good bit" lighter complected than appellant. Complaint is made of the fact that the photos selected are directed to the sequence of the departure of the robber where he was not behind a pillar or a car and was most visible to the witnesses. Appellant argues that the jury had an opportunity to view the photographs for a much longer period of time than did the witness on the night of the crime and had the effect of bolstering rather than aiding the jury by explaining the witness' testimony. It is urged that the

photographs added to the testimony of the witness, that there was an unfairness in admitting the photographs and on due process grounds the case should be remanded for trial free of such improper evidence.

■ Appellant's objection at trial was the failure to lay a proper predicate as "to the police officer" and "in reference to the position of any person that was in the photographs with what he saw that evening." The complaints appellant makes on appeal have been set out in detail and they do not comport with the objection voiced at trial. Error presented on appeal must be the same raised at trial. *Vanderbilt v. State*, 629 S.W.2d 709, cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (Tex.Cr.App.1981); *Bowden v. State*, 628 S.W.2d 782 (Tex.Cr.App.1982); *Henderson v. State*, 617 S.W.2d 697 (Tex.Cr.App.1981).

■ Error, if any, in the admission of the photographs was not so egregious as to constitute a denial of due process and deprivation of a fair trial.

The judgment is affirmed.

TEAGUE, Justice, concurring and dissenting.

Although I agree with the majority opinion that appellant's fourth ground of error is without merit, I am compelled to dissent to its holding that his ground of error is not properly before this Court for review purposes.

It is clear from the record that appellant's main objection at trial to the admission into evidence of four still photographs was that because a police officer posed in positions that fit the State's witness Lee Slotnik's description of what he had seen after the third gunman, (alleged to be appellant), came out the door of the store where the killing occurred, the photographs should not have been admitted into evidence. On appeal, he also argues that the photographs bolstered the testimony of Slotnik. I am unable to agree that the ground of error that appellant presents is not subject to review.

The four still photographs depict what Slotnik could see "at some point in time," and were like "a still frame on a motion picture." A police officer posed in the photographs. However, the record reflects that the State agreed to block out from the photographs the police officer who was in the photographs.

The Fort Worth Court of Appeals in *Lopez v. State*, 651 S.W.2d 413 (Tex.App.—Ft. Worth 1983), reversed on other grounds, see *Lopez v. State*, 664 S.W.2d 85 (Tex.Cr. App.1985), correctly pointed out that "any staged, re-enacted criminal acts or defensive issues involving human beings are impossible to duplicate in every minute detail and are therefore inherently dangerous, offer little in substance and the impact of re-enactments is too highly prejudicial to insure the State or the defendant a fair trial." However, whether the trial court will be found to have abused its discretion in admitting or excluding such re-enactments must be determined on an ad hoc basis. *Ginther v. State*, 672 S.W.2d 475 (Tex.Cr.App.1984).

In this instance, what was exhibited to the jury was not a motion picture or videotaped re-enactment of the offense, but, instead, were four still photographs with a person therein depicting locations that fit Slotnik's description of what he had seen after the third gunman, (alleged to be the appellant), came out of the store. Thus, what is before us closely resembles what occurred in *Sales v. State*, 426 S.W.2d 249 (Tex.Cr.App.1968), in which this Court upheld the admission into evidence of a still photograph of the victim who was robbed in that cause. In *Sales*, supra, the photograph, taken after the robbery, depicted the victim standing at the checking stand where she had been robbed. Here, the still photographs depicted the path the gunman took after he had departed from the store.

Although I agree with appellant's counsel on appeal that arguably the photographs, in the eyes of the jury, might have bolstered the testimony of Slotnik, I am also unable to state that the need for the jury to better understand the path that the gunman took was not great. I am also unable to conclude that the photographs made more vivid the prosecution's argument that the defendant was the third gunman who departed from the store.

In this instance, because I believe that the still photographs could have been of great benefit to the jury, and because I also find that the prejudice, if any, was not great to appellant, I am unable to state in this instance either that the trial judge abused his discretion in admitting the photographs into evidence or that if it can be said that he did abuse his discretion in admitting the photographs into evidence, such error calls for reversal of appellant's conviction.

The majority correctly overrules appellant's ground of error.