Affirmed and Memorandum Opinion filed July 31, 2003














Affirmed and
Memorandum Opinion filed July 31, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO.
14-02-00730-CR

_______________

 

HERMAN LEE
JOSHUA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

__________________________________________

 

On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 912,806

__________________________________________

 

M E M O R A N
D U M   O P I N I O N

 

            Herman Lee Joshua appeals a
conviction for aggravated robbery[1] on
the grounds that: (1) the evidence is factually insufficient to support his
conviction and (2) the trial court erred in denying his motion to suppress an
in-court identification by the complainant. 
We affirm. 

                                                      Sufficiency
of the Evidence

            Appellant’s first issue argues that
the evidence is factually insufficient to prove that he was the person who
committed the offense because the complainant’s descriptions of appellant to
the police and at trial were varied and because the complainant’s boyfriend,
who was a second eyewitness to the robbery, was never located.  In assessing factual sufficiency, we consider
all of the evidence in a neutral light to determine whether the proof of guilt
is so obviously weak as to undermine confidence in the jury’s determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by
the contrary proof.  Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

            The complainant testified at trial
that she was robbed at gunpoint while walking home with her boyfriend, Hugo
Garcia, from the Fiesta store where she worked as a cashier.  She testified that the robber was “old,”
“black,” “not too big, not too small, just medium,” a “little bit taller” than
her at five feet three inches, and wearing a trench coat.  The complainant also testified that, during
the robbery, appellant was very close to her, nothing was covering his face,
she could see his face, and “there is no way you can forget somebody like
that.”  She also testified that the
robbery scene was well lit by street lamps and lighting from nearby houses so
that “you could see very well” at night.

            After the robbery, the police were
called.  The responding officer testified
that the complainant described the robber as a skinny black male, six feet
tall, with a dark brown complexion and peppery gray hair.[2]  The complainant also told the officer that
she recognized the robber from a previous incident where he had been caught
shoplifting at her Fiesta store.

            The day after the robbery, the
complainant went to the Fiesta store’s security office to identify the robber
from photographs of its past shoplifters. 
After the complainant described the robber to the store’s loss
prevention manager, he showed the complainant the only five photos he had
resembling her description for the preceding year.  After the complainant identified appellant in
the third photograph, the loss prevention manager showed her two more
photos.  After looking at them, the
complainant still insisted that the person in the third photograph was the
robber.  Later, the complainant
identified appellant as her robber in a police photo spread shown to her by the
investigating officer.

            Appellant testified at trial that he
did not commit the robbery and that, during the robbery, he was outside a
different store where he has been every night for the last two years. However,
the police could not verify this alibi. 
Appellant also claims that the police should have searched for the other
eyewitness to the crime, Garcia, so that he might testify that appellant was
not the robber.  However, the
investigating officer testified that he did not search for Garcia because the
complainant told him that Garcia had gone to Mexico, he would not be returning,
and there was no way to contact him.[3]

            Appellant also contends that it is
easy for a person of one race to confuse people of a different race who
resemble each other.  Furthermore,
appellant claims that the description given to the police by the complainant
was that of a man with peppery gray hair, but that he has black hair.  Finally, the complainant described appellant
as “old”, whereas appellant claims in his brief that his age at the time of the
robbery (59 years) does not qualify as “old.”

            Considering all of the evidence in a
neutral light, the proof of appellant’s identification is not so obviously weak
as to undermine confidence in the trial court’s determination or greatly
outweighed by contrary proof. 
Accordingly, we overrule appellant’s first issue.

                                                            Motion to Suppress

            Appellant’s second issue contends
that the trial court erred in denying his motion to suppress the complainant’s
in-court identification of appellant because it was tainted by the
impermissibly suggestive pretrial identification by the complainant at the
Fiesta store’s security office. 
Appellant argues that this identification was impermissibly suggestive
in that the people in the photographs were dissimilar in appearance to him and
the photographs were shown to the complainant one at a time rather than all at
once in a “spread.”

            A ruling on a motion to suppress an
in-court identification due to an impermissibly suggestive pretrial
identification procedure is reviewed under the Guzman standard.  Loserth v. State, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  Unless the ruling is based on
conflicting evidence which requires  an
evaluation of credibility and demeanor, the ruling is a mixed question of law
and fact that is reviewed de novo.  See Loserth, 963 S.W.3d
at 773.

            Due process requires that an
in-court identification not be admitted into evidence when it has been tainted
by an out-of-court identification that, considering the totality of the
circumstances, is impermissibly suggestive and gives rise to a substantial
likelihood of irreparable misidentification. 
Conner v. State, 67 S.W.3d
192, 200 (Tex. Crim. App. 2001).[4] A
defendant must prove by clear and convincing evidence both that the identification procedure was impermissibly suggestive and
that the suggestiveness gave rise to a substantial likelihood of irreparable
misidentification.  Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App.1995). 
However, even if both these elements are established, the in-court
identification will still be admissible if the State can show that the ability
of the witness to identify the defendant has origin independent from the
pretrial procedure.  McFarland v. State, 928 S.W.2d 482, 508 (Tex. Crim.
App. 1996).

            Although not easy to definitively
summarize, impermissible suggestiveness refers to an aspect of the
identification procedure that not only places emphasis on the defendant’s
likeness relative to the others being viewed, but does so more than the
circumstances reasonably require.[5]  In this case, the complained of photo viewing
was not conducted by or at the behest of government officials[6] (or
even the Fiesta loss prevention manager). 
Of the five photos shown to the complainant, all were of African
American males, four were of heights between five feet, nine inches, and five
feet, eleven inches, and three of those, including appellant’s, were of weights
between 150 and 160 pounds.  The ages of
three of the other men in the photos were within 13 years of appellant’s
age.  Moreover, there is no evidence that
the store had any other photos that resembled appellant more closely than these
and that might have been used in their place. 
The record would thus suggest that the only alternatives at the Fiesta
store to showing the complainant these five photos would have been to show her
fewer of them or none at all.  Under
these circumstances, to the extent the photo spread was suggestive due to
dissimilarity, it was not more suggestive than the circumstances reasonably
required and thus was not impermissibly suggestive.

            With regard to appellant’s complaint
that the photos were impermissibly suggestive for being shown to appellant one
at a time rather than all at once in a spread, appellant’s photo was the third
one presented to the complainant and two more were shown to her after
appellant’s.  Apart from the
dissimilarity of the photos, addressed above, appellant has provided no
authority or rationale to support the proposition that viewing photos one at a
time creates any additional suggestiveness, particularly with regard to the
third photo viewed.[7]  Therefore, appellant has failed to
demonstrate that the challenged out-of-court identification was impermissibly
suggestive.

            Nevertheless, because the
out-of-court identification was somewhat suggestive, we will also address the
likelihood for irreparable misidentification. 
In determining whether such a likelihood existed, the following factors
are considered: (1) the witness’s opportunity to view the criminal act; (2) the
witness’s degree of attention; (3) the accuracy of the witness’s prior
description of the criminal; (4) the level of certainty demonstrated by the
witness at the confrontation, and (5) the time between the crime and
confrontation.  Manson v. Brathwaite, 432 U.S. 98, 114
(1977).  These five factors are reviewed
deferentially in a light most favorable to the trial court’s ruling and then
weighed de novo against the
corrupting effect of the suggestive pretrial identification procedure.  Ibarra
v. State, 11 S.W.3d 189, 195-96 (Tex. Crim. App.
1999).

            Applying these factors in this case,
the evidence shows that: (1) the witness had a close, unobstructed, and
well-lit view of the criminal act; (2) the witness had a high degree of
attention; (3) the witness’s prior description of the criminal to the police
was accurate in all major respects; (4) the witness demonstrated a high degree
of certainty at the identification; and (5) the time between the crime and
identification was less than 24 hours. 
These five factors suggest no lack of reliability of the identification
in this case and thus no likelihood for irreparable misidentification.  Accordingly, we overrule appellant’s second
issue and affirm the judgment of the trial court.  

 

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Memorandum
Opinion filed July 31,
 2003.

Panel consists of Chief Justice Brister,
and Justices Fowler and Edelman.

Do Not Publish — Tex. R. App. P. 47.2(b).

 

 











[1]           The court found appellant guilty
and sentenced him to 25 years confinement.





[2]           The complainant testified at trial
she never described the robber’s hair to the responding officer.





[3]           Nor has appellant presented any
evidence of what Garcia’s testimony would have been.





[4]           Following an initial
misidentification, a witness is apt to retain in his memory the misidentified
likeness rather than the person actually seen, thereby reducing the
trustworthiness of a subsequent in-court or out-of-court identification.  See
Simmons v. United States, 390 U.S. 377,
383-84 (1968).





[5]           See, e.g.,
Stovall v. Denno, 388 U.S. 293, 301-02
(1967) (holding that allowing complainant to identify appellant singly in her
hospital room rather than as part of a line-up, although generally
unacceptable, was warranted by the complainant’s grave medical condition and
the fact that she was the only person who could identify or exonerate him).  A suggestive procedure would include, for
example, one in which the subjects viewed besides the suspect were known to the
identifying witness or were grossly dissimilar in appearance from the
suspect.  See United States v. Wade, 388 U.S. 218, 233
(1967).  However, while the better
practice is to get as many individuals as possible who fit the suspect’s
description, due process does not require all the individuals to be
identical.  Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim.
App. 1985).





[6]           See Rogers
v. State, 774 S.W.2d 247, 260 (Tex. Crim.
App. 1989) (“Given the absence of any official action contributing to the
likelihood of misidentification in this case [from seeing the defendant’s photo
in a newspaper article about his arrest], the constitutional sanction of
inadmissibility should not be applied, regardless of the extent to which any
witness's in-court identification might have been rendered less reliable by
prior exposure to the newspaper photograph.”), overruled on other grounds, Peek
v. State, 106 S.W.3d 72, 79 (Tex. Crim. App.
2003).





[7]           Showing multiple photos one at a
time is considerably different than showing only a single photo, which is
clearly improper.  See Bond v. State,  29 S.W.3d
169, 172 (Tex. App.– Houston [14th Dist.] 2000, pet. ref’d).