COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-334-CR

 

 

TIMOTHY MCCLENON ASHFORD                                           APPELLANT



A/K/A
TIMOTHY M. ASHFORD

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Timothy McClenon
Ashford a/k/a Timothy M. Ashford appeals from his conviction for aggravated
robbery.  We affirm.

In his first point, appellant
argues that the evidence is factually insufficient to show that he is the
person who committed the charged offense.

 








The evidence shows as
follows:

On the morning of August 6,
2005, Philip Featherstone was working at his job mowing and weed eating around
some storage sheds owned by Dave Estates in east Fort Worth.  His weed eater stopped working, so he went to
his nearby SUV to try to fix it.  As he
was attempting to fix the weed eater, appellant approached.  

Appellant attempted to engage
Featherstone in small talk, which made Featherstone nervous.  Featherstone called his father on his cell
phone, and appellant appeared to leave. 
Featherstone then got off the phone and continued to work on his weed
eater.  Appellant returned and again
tried to engage Featherstone in conversation.

Featherstone decided to leave
and started putting the weed eater in the back of his SUV.  While Featherstone was loading the weed
eater, appellant came up behind him, put his arm around Featherstone=s neck, and hit him in the face. 
Featherstone fell to the ground.  Appellant put his knee between Featherstone=s shoulder blades, opened a knife that he stuck against Featherstone=s side, and said, AMotherf-----, don=t lose your life over your car.@ Featherstone stopped struggling. 
Appellant took Featherstone=s keys and drove away.  Featherstone
called 9-1-1 and his father.  The police
and Featherstone=s father
arrived a few minutes later.








Featherstone told the police
of the attack and reported that during the small talk that preceded the attack
appellant said that he had applied for a job at City Kitchen, a nearby catering
business.  Featherstone, his father, and
a police officer went to City Kitchen. 
They met Anthony Griffin, the chef manager, explained that Featherstone
had been robbed, and asked if Griffin had seen anyone.  Griffin described a man who had come into
City Kitchen earlier that day and talked to Griffin for about ten minutes.  Griffin=s description of appellant matched Featherstone=s. 

Police found Featherstone=s SUV later that day.  Many
items had been stolen from it, and it had been damaged.  Nearly two weeks later, Griffin and
Featherstone each picked appellant=s photograph out of a photographic line-up, and they both identified
appellant at trial. 








Appellant argues that Griffin
described and identified appellant simply because he subconsciously remembered appellant
from when he had worked on a remodeling job for City Kitchen several months
before the robbery.  There is little, if
any, evidence to support this theory. 
Appellant=s boss on
the remodeling project testified that appellant had worked on the project for
eleven days and that, although he thought it probable, he could not say whether
Griffin would have seen appellant during that time period.  Griffin testified that, when appellant
stopped at City Kitchen on the morning of the robbery, he said he had helped
with the remodeling and had just come in to see Ahow it came out.@  Griffin testified that he did not remember
appellant from the remodeling job; instead, Griffin said he remembered what
appellant looked like because he thought appellant=s stopping by City Kitchen was odd. 

Appellant also contends that
Featherstone=s
identification was influenced by his having spoken to Griffin just after the
crime and hearing Griffin=s
description of appellant.  But
Featherstone testified that appellant approached him twice and talked to him for
five to seven minutes before attacking him. Moreover, there is no evidence that
Featherstone and Griffin=s
conversation about the man they had seen compromised Featherstone=s selection of appellant=s picture from a photographic line-up nearly two weeks later or his
subsequent in-court identification of appellant. 

For these reasons, applying
the appropriate standard of review,[2]
we hold that the evidence is factually sufficient to support the jury=s finding as to appellant=s identity.  Therefore, we
overrule appellant=s first
point.








In his second point,
appellant complains that the trial court improperly denied his motion to
suppress Featherstone=s and
Griffin=s identification of him from the six-picture photographic
line-up.  Appellant argues that the
line-up was impermissibly suggestive because there were Aselectively subtle differences@ between appellant=s photograph and the other five individuals in the array. 

A pretrial photographic
identification of the defendant must be excluded if, considering the totality
of the circumstances, the identification procedure was so impermissibly
suggestive as to give rise to a very substantial likelihood of irreparable
misidentification.[3]  Although every photographic array must
contain photographs of individuals who fit the rough description of the
suspect, it is not essential that all individuals be identical in appearance.[4]  Neither due process of law nor common sense
requires such exactitude.[5]








In this case, all of the men
pictured in the array are African-American males of similar age with
closely-cropped hair and similar facial expressions.  Only their faces are pictured, so the array
gives no indication concerning their height or weight.  Five of the six, including appellant, have
goatees.  One of the fiveCnot appellantChas a
lighter complexion and a tattoo or some type of marking on his neck.  There is no appreciable difference in the
skin tones of the other five. 

Further, Featherstone and
Griffin both had excellent opportunities to view appellant on the day of the
offense because he engaged each of them in conversation for several minutes
under what they considered unusual circumstances.  Both men testified that the police detective
who showed them the line-up did not suggest that the robbery suspect might be
in it; yet the police detective testified that Featherstone and Griffin had no
trouble whatsoever identifying appellant. 

Considering all of the
circumstances surrounding the pretrial photographic identification procedure,
we hold that it was not impermissibly suggestive and that the trial court did
not err by denying appellant=s motion to suppress the identifications.  Accordingly, we overrule appellant=s second point and affirm the trial court=s judgment.       

PER CURIAM

PANEL F: 
CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

DELIVERED:  
September 13, 2007                        











[1]See Tex. R. App. P. 47.4.





[2]See Watson
v. State, 204 S.W.3d 404, 414-15, 17 (Tex. Crim. App. 2006); Drichas v.
State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (setting out the factual sufficiency
standard of review).





[3]Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999), cert.
denied, 531 U.S. 828 (2000); Barley v. State, 906 S.W.2d 27, 33
(Tex. Crim. App. 1995), cert. denied, 516 U.S. 1176 (1996).





[4]Buxton
v. State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985), cert.
denied, 476 U.S. 1189 (1986).





[5]Id.