COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-334-CR

TIMOTHY MCCLENON ASHFORD APPELLANT

A/K/A TIMOTHY M. ASHFORD

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Timothy McClenon Ashford a/k/a Timothy M. Ashford appeals from his conviction for aggravated robbery.  We affirm.

In his first point, appellant argues that the evidence is factually insufficient to show that he is the person who committed the charged offense.

The evidence shows as follows:

On the morning of August 6, 2005, Philip Featherstone was working at his job mowing and weed eating around some storage sheds owned by Dave Estates in east Fort Worth.  His weed eater stopped working, so he went to his nearby SUV to try to fix it.  As he was attempting to fix the weed eater, appellant approached.  

Appellant attempted to engage Featherstone in small talk, which made Featherstone nervous.  Featherstone called his father on his cell phone, and appellant appeared to leave.  Featherstone then got off the phone and continued to work on his weed eater.  Appellant returned and again tried to engage Featherstone in conversation.

Featherstone decided to leave and started putting the weed eater in the back of his SUV.  While Featherstone was loading the weed eater, appellant came up behind him, put his arm around Featherstone’s neck, and hit him in the face.  Featherstone fell to the ground.  Appellant put his knee between Featherstone’s shoulder blades, opened a knife that he stuck against Featherstone’s side, and said, “Motherf-----, don’t lose your life over your car.” Featherstone stopped struggling.  Appellant took Featherstone’s keys and drove away.  Featherstone called 9-1-1 and his father.  The police and Featherstone’s father arrived a few minutes later.

Featherstone told the police of the attack and reported that during the small talk that preceded the attack appellant said that he had applied for a job at City Kitchen, a nearby catering business.  Featherstone, his father, and a police officer went to City Kitchen.  They met Anthony Griffin, the chef manager, explained that Featherstone had been robbed, and asked if Griffin had seen anyone.  Griffin described a man who had come into City Kitchen earlier that day and talked to Griffin for about ten minutes.  Griffin’s description of appellant matched Featherstone’s. 

Police found Featherstone’s SUV later that day.  Many items had been stolen from it, and it had been damaged.  Nearly two weeks later, Griffin and Featherstone each picked appellant’s photograph out of a photographic line-up, and they both identified appellant at trial. 

Appellant argues that Griffin described and identified appellant simply because he subconsciously remembered appellant from when he had worked on a remodeling job for City Kitchen several months before the robbery.  There is little, if any, evidence to support this theory.  Appellant’s boss on the remodeling project testified that appellant had worked on the project for eleven days and that, although he thought it probable, he could not say whether Griffin would have seen appellant during that time period.  Griffin testified that, when appellant stopped at City Kitchen on the morning of the robbery, he said he had helped with the remodeling and had just come in to see “how it came out.”  Griffin testified that he did not remember appellant from the remodeling job; instead, Griffin said he remembered what appellant looked like because he thought appellant’s stopping by City Kitchen was odd. 

Appellant also contends that Featherstone’s identification was influenced by his having spoken to Griffin just after the crime and hearing Griffin’s description of appellant.  But Featherstone testified that appellant approached him twice and talked to him for five to seven minutes before attacking him. Moreover,
 there is no evidence that Featherstone and Griffin’s conversation about the man they had seen compromised Featherstone’s selection of appellant’s picture from a photographic line-up nearly two weeks later or his subsequent in-court identification of appellant. 

For these reasons, applying the appropriate standard of review,
(footnote: 2) we hold that the evidence is factually sufficient to support the jury’s finding as to appellant’s identity.  Therefore, we overrule appellant’s first point.

In his second point, appellant complains that the trial court improperly denied his motion to suppress Featherstone’s and Griffin’s identification of him from the six-picture photographic line-up.  Appellant argues that the line-up was impermissibly suggestive because there were “selectively subtle differences” between appellant’s photograph and the other five individuals in the array. 

A pretrial photographic identification of the defendant must be excluded if, considering the totality of the circumstances, the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
(footnote: 3)  Although every photographic array must contain photographs of individuals who fit the rough description of the suspect, it is not essential that all individuals be identical in appearance.
(footnote: 4)  Neither due process of law nor common sense requires such exactitude.
(footnote: 5)
 In this case, all of the men pictured in the array are African-American males of similar age with closely-cropped hair and similar facial expressions.  Only their faces are pictured, so the array gives no indication concerning their height or weight.  Five of the six, including appellant, have goatees.  One of the five—not appellant—has a lighter complexion and a tattoo or some type of marking on his neck.  There is no appreciable difference in the skin tones of the other five. 

Further, Featherstone and Griffin both had excellent opportunities to view appellant on the day of the offense because he engaged each of them in conversation for several minutes under what they considered unusual circumstances.  Both men testified that the police detective who showed them the line-up did not suggest that the robbery suspect might be in it; yet the police detective testified that Featherstone and Griffin had no trouble whatsoever identifying appellant. 

Considering all of the circumstances surrounding the pretrial photographic identification procedure, we hold that it was not impermissibly suggestive and that the trial court did not err by denying appellant’s motion to suppress the identifications.  Accordingly, we overrule appellant’s second point and affirm the trial court’s judgment. 

PER CURIAM

PANEL F:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:   September 13, 2007 
 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Watson v. State
, 204 S.W.3d 404, 414-15, 17 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (setting out the factual sufficiency standard of review).

3:
Ibarra v. State,
 11 S.W.3d 189, 195 (Tex. Crim. App. 1999), 
cert. denied,
 531 U.S. 828 (2000); 
Barley v. State,
 906 S.W.2d 27, 33 (Tex. Crim. App. 1995), 
cert. denied,
 516 U.S. 1176 (1996).

4:
Buxton v. State,
 699 S.W.2d 212, 216 (Tex. Crim. App. 1985), 
cert. denied,
 476 U.S. 1189 (1986).

5:
Id
.