

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00706-CR

Barry Arthur **BROWN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR7118A
Honorable Philip Kazen, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:        Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice
            Jason Pulliam, Justice

Delivered and Filed:  September 7, 2016

AFFIRMED

A jury convicted Barry Brown of the offense of aggravated robbery, and based upon the jury's recommendation, the trial court sentenced Brown to sixty years' imprisonment. In his sole issue on appeal, Brown contends the trial court erred by denying his motion to suppress the eyewitness identification evidence presented at trial. The trial court's judgment is affirmed.

### BACKGROUND

On May 18, 2014, a man approached the cashier's counter at a drug store in San Antonio. The man handed the cashier, Anntoyna Yanes, a note demanding she put the money from the

register into a bag. When Yanes hesitated, the man lifted his shirt to display a firearm tucked into his waistband. Yanes followed the directions on the note, and the man left the store.

San Antonio Police Department investigators identified Brown as a suspect, and Detective Frank Gallegos prepared a photograph lineup that included Brown. On June 3, 2014, Yanes identified Brown from the lineup as the man who committed the robbery. Thereafter, Brown was indicted for the offense of aggravated robbery. A jury found Brown guilty and assessed punishment at sixty years' imprisonment. Brown subsequently perfected this appeal.

## ANALYSIS

In his sole issue on appeal, Brown contends the trial court erred by denying his motion to suppress Yanes's in-court identification because the identification was tainted by an impermissibly suggestive pre-trial procedure.

### Standard of Review

An appellate court reviews a trial court's ruling on a motion to suppress under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). The reviewing court gives almost total deference to the trial court's findings of historical fact that are supported by the record and its application of the law to facts if the resolution of those questions turns on an evaluation of credibility and demeanor. *Story v. State*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Amador*, 221 S.W.3d at 673. The reviewing court reviews *de novo* the trial court's application of the law to the facts when the issue does not turn on credibility and demeanor. *Story v. State*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Amador*, 221 S.W.3d at 673. The trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing a trial court's ruling on a motion to suppress, the appellate court must view the evidence in the light most favorable to the ruling. *Wade v. State*, 422 S.W.3d 661, 666

(Tex. Crim. App. 2013). The appellate court will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Story*, 445 S.W.3d at 732.

**Application**

An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pre-trial identification procedure. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). The admissibility of an in-court identification is determined by a two-step analysis: "1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification." *Barley v. State*, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995).

## A. Whether the pre-trial identification procedure was impermissibly suggestive

Brown contends the identification procedure was impermissibly suggestive because in the photo array of six different black men with similar features, two of the men wore orange shirts indicative of jail clothing and were photographed in front of a different colored background. Brown was one of the men wearing an orange shirt and in front of a different background.

Both Yanes and Detective Gallegos testified at the suppression hearing. Detective Gallegos testified he prepared the photo array using a digital database comprised of photos of both suspects and non-suspects from previous lineups to find "fillers" for the current photo array. Detective Gallegos explained "fillers" are individuals of similar age, height, weight, and features as the suspect. Detective Gallegos further explained the array is composed of six photos — the suspect and five fillers. Detective Gallegos testified that when the array is presented to the witness, it is done by placing the six photos in separate folders. The witness is given the six folders, plus two additional folders containing blank paper, one at a time. Detective Gallegos testified he handed each folder to Yanes separately and asked whether the person in the photo was the person

who committed the crime. Detective Gallegos additionally testified he did not know which of the folders contained Brown's photo.

In her testimony, Yanes confirmed Detective Gallegos did not guide or coach her identification in any way. Yanes identified Brown during the suppression hearing and testified her identification was based on her memory, not on the photographs she viewed. Yanes testified that when she identified Brown during the photo lineup, she recalled his nose, skin tone, and jaw line. Yanes additionally testified she did not recall that the backgrounds were different in any of the photographs, but she remembered the subjects of two photographs were wearing orange jail clothing. Yanes did not indicate the orange jail clothing influenced her identification.

At the end of the hearing, the trial court noted the orange colored shirts depicted in two of the photographs were different shades of orange and one looked like a t-shirt. The trial court then found Yanes based her in-court identification on her memories and the events that happened the day of the offense and denied Brown's motion to suppress.

Although the better practice may be to include as many individuals as possible who fit the suspect's description, it is not essential that all individuals in a photo array be identical in appearance. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985). "[N]either due process nor common sense require such exactitude." *Id.* (internal quotations and citation omitted). It is only required that the array show individuals who fit a rough description of the suspect. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.—Dallas 1999, pet. ref'd). A difference in shirt colors does not, by itself, render a photographic lineup impermissibly suggestive. *See Cienfuegos v. State*, 113 S.W.3d 481, 492 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (stating that the mere fact that only appellant wore a red shirt did not render the lineup impermissibly suggestive).

The photo array Yanes viewed was admitted at the suppression hearing and is a part of the record on appeal. All the photographs depict black males, who appear similar in age, facial

features, and hair color. Although two photographs have different backgrounds and the subjects are wearing orange shirts, Yanes testified her identification of Brown from the lineup was based on her recollection of his facial features and skin tone.

This court concludes the different background and orange-colored shirt do not render Brown's appearance so different from the other participants' that the procedures were impermissibly suggestive.

**B.    Whether any impermissibly suggestive procedures gave rise to a very substantial likelihood of irreparable misidentification.**

Even if the procedures were impermissibly suggestive, Brown failed to satisfy the second element for exclusion of the in-court identification. When the totality of the circumstances shows there is no substantial likelihood of misidentification, despite a suggestive pre-trial identification procedure, the in-court identification is considered reliable. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). Reliability is the "linchpin" for determining the admissibility of identification testimony. *Luna*, 268 S.W.3d at 605; *Ibarra*, 11 S.W.3d at 195.

To determine whether a substantial likelihood for irreparable misidentification has been created, the reviewing court considers the nonexclusive factors listed by the United States Supreme Court. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). These factors include: (1) the witness's opportunity to view the criminal when the crime occurred; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.*; *see Barley*, 906 S.W.2d at 35 n.8. An appellate court weighs these nonexclusive factors "against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances." *Loserth v. State*, 963 S.W.2d 770, 772 (Tex.

Crim. App. 1998). The reviewing court may only reverse upon an appellant's clear and convincing showing that the identification was irreparably tainted. *Barley*, 906 S.W.2d at 34.

Yanes testified she had an opportunity to view Brown before and during the robbery. Yanes's testimony suggested she had an unobstructed view of Brown while in a lighted retail store as he stood in line behind other customers. Yanes looked at Brown's face several times when he handed her the note and during the robbery. Further, Yanes was able to describe Brown as wearing glasses and a baseball cap. At the time of the identification, nearly two weeks after the robbery, Yanes was able to articulate her reasoning for identifying Brown. Further, at trial Yanes testified with certainty that she based her identification on Brown's skin tone, nose, and jaw line. Thus, even assuming the pre-trial procedure was impermissibly suggestive, the reliability of Yanes's statement leads this court to conclude that no substantial risk of irreparable misidentification was created. *See id.* at 35.

Viewing the evidence in the light most favorable to the trial court's ruling, this court concludes the trial court did not abuse its discretion by finding Yanes's in-court identification was untainted by an impermissibly suggestive pretrial procedure and denying Brown's motion to suppress.

CONCLUSION

Based on the forgoing, the trial court's judgment is affirmed.

Jason Pulliam, Justice

DO NOT PUBLISH