**Affirmed and Memorandum Opinion filed May 29, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00087-CR

---

### JOSHUA RAY KELLY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1340950**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Joshua Ray Kelly of aggravated robbery with a deadly weapon. The jury found the allegations in the enhancement paragraph to be true and sentenced appellant to confinement for twenty-eight years. Two issues are raised on appeal claiming the trial court erred in overruling appellant's motion to suppress and ineffective assistance of counsel. We affirm.

# I.     BACKGROUND

The complainant, Salih Ozen, buys used cars for car dealerships.  He received a call from a woman wanting to sell a car.  She indicated that she was pregnant and needed money.  He agreed to meet her and brought cash to purchase the car.  A woman who appeared to be nine months pregnant met Ozen at the agreed place.  As Ozen was about to open the hood of the car, a man suddenly approached, pointed a gun at his head, and ordered him to get on the ground.  Ozen complied and the man took the money out of Ozen's pocket.  The man and woman fled.  Ozen was unable to follow because the key had been removed from his car; he called 911.  Following an investigation, Ozen identified Erica Barksdale and appellant as the man and woman who robbed him.  Appellant was Barksdale's boyfriend.

# II.     MOTION TO SUPPRESS

Appellant's first issue claims the trial court erred in denying his motion to suppress any in-court identification.  Before trial, Ozen selected appellant from a photo array as the person who robbed him at gunpoint.  Ozen then identified appellant in court.  Appellant sought to suppress the in-court identification on the grounds the pre-trial identification was impermissibly suggestive.

## A. Standard of Review

An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification.  *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).  The test is whether, considering the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

2

misidentification." *Luna*, 268 S.W.3d at 605 (quoting *Ibarra*, 11 S.W.3d at 195) (internal quotation marks omitted). This review involves a two-step analysis: (1) whether the out-of-court identification procedure was impermissibly suggestive; and, if so, (2) whether that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995).

A pretrial identification procedure may be suggestive by the manner in which it is conducted, such as if a police officer points out the suspect or suggests that the suspect is included in the photo array. *Barley*, 906 S.W.2d at 33. Suggestiveness may also arise if the suspect is the only individual closely resembling the pre-procedure description. *Id.* It is not essential that all individuals depicted in the photo array be identical in appearance. *See Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985) (stating that varying heights, weights, and skin colors of persons in photo array did not render array impermissibly suggestive). Neither due process nor common sense requires such exactitude. *Id.*

When parties re-litigate during trial the issue addressed by a pre-trial suppression hearing, we consider all of the evidence from trial and the hearing in reviewing the trial court's decision. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). The burden is on the defendant to show by clear and convincing evidence that the in-court identification is unreliable. *Santos v. State,* 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *In re G.A.T.,* 16 S.W.3d 818, 827 (Tex.App.—Houston [14th Dist.] 2000, pet. denied) ("[U]nless it is shown by clear and convincing evidence that the witness'[s] in-court identification of the defendant as the suspect was tainted by improper pretrial procedure and confrontations, the in-court identification is always admissible.") (citing *Jackson v. State*, 628 S.W.2d 446, 448 (Tex. Crim. App. 1982)). Whether

3

the pre-trial identification procedure was impermissibly suggestive is a mixed question of law and fact that does not turn on an evaluation of witnesses' credibility and demeanor, and we review such questions de novo. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998).

## B. The Evidence

Ozen testified that he looked at the man's face. Ozen looked at the man "like in seconds. . . . maybe not even a second." He testified it was enough to get a good look. At trial, Ozen described the man's clothing as a "dark kind of color jean and then a dark color — like, a brown, maybe, shirt." According to Ozen, when officers arrived he described the man as "a black male, light skinned; and he has a tattoo on his neck," about six feet to six feet one in height and 180 to 190 pounds.

Appellant has a number of tattoos, including one on the back of his neck. He testified "the newest one I got is an angel" and said he got it in January 2011. He then stated that the one on his neck was the last one and he got it on March 15 — ten days after the robbery — from a tattoo parlor that has since closed. Appellant testified he is six feet two inches tall, and weighs approximately 198 pounds.

Officer Marcus Ryans of the Houston Police Department testified that Ozen described the man as a black male, light skinned, black shirt and blue jeans. Ozen told Officer Ryans the man was in his early to mid-twenties. Officer Ryans did not recall asking about the man's height and if he did, did not remember what he was told. Ozen told Officer Ryans that "he had a low haircut." Ozen did not originally say anything about a tattoo, but when Officer Ryans talked to him again Ozen did mention it. Ozen did not say anything about facial hair.

4

Officer Ryans testified that a photo array is assembled by entering the suspect's name into the computer and then searching for similar photos. The computer selects photos of people that are close in characteristics and puts them on a screen. The array is chosen from those photos and the computer randomly selects the position for each photo.

Officer Ryans showed Ozen photo arrays on March 6 and again on March 8; they were of males and females. Ozen testified that he was shown photos on two occasions, "but it wasn't him."

Officer Ryans showed Ozen another array on March 19, 2012, containing photos of appellant and five other males. Ozen testified that "the third time I went to there and they show me other one and he was there." Officer Ryans testified that Ozen positively identified appellant "immediately . . . [h]e went right to it." Officer Ryans testified that he did not suggest appellant was the suspect. In the array, appellant is the only person wearing a black shirt. Officer Ryans testified three persons in the spread have facial hair, all six look close in age, and two of the men are of a darker skin tone than appellant. After Ozen made the identification, Officer Ryans said, "Okay." Ozen said, "That's him. I know it's him." According to Officer Ryans, he was not agreeing with Ozen, he "just said okay."

Ozen testified as follows:

Q.    What, if anything, do you remember him telling you, the officer, prior to him showing you this photo spread? Go ahead and tell the Judge.

A.    He told me just, you know, to pick whoever the person is. You don't have to pick anyone. It's just like, you know, make sure a hundred percent. And that's why the first two time I didn't pick anyone because he wasn't there; and the third one, which is here, I'm a hundred percent sure that's him.

Q.    And on this photo spread, which place is the person who robbed

5

you? Which number is he?

Number -- (witness pointing) -- 5.

Q.     Okay. Do you see that person in the courtroom today?

A.     Yes, I do.

Q.     Could you please point to him and describe what he's wearing?

A.     He's wearing the white shirt and red tie and glasses.

Q.     Now, do you identify him as someone that you remember from this picture or the person that you remember robbing you that day, on March 5, 2012?

A.     I remember him from when he robbed me, from there.

Ozen testified that he had not seen any of the photos in the array containing appellant's photo before.  According to Ozen, after he identified appellant, Officer Ryans said, "You sure?" and he said, "Yes."  Ozen stated he was shown the array the last time he came to court so when it was shown to him during the hearing it was the third time he had seen it.

Q.     (BY [THE STATE]) You saw the photograph, you're now saying, three separate times: You saw it when the police officer showed it to you originally, you saw it again when the prosecutor showed it to you again, and you've seen it here today; is that correct?

A.     Yes.

At trial, Ozen testified that when he identified appellant in the array he was a "hundred percent sure.  I'm sure in this courtroom.  Nobody can forget something like that either because I never live through anything like that in my life."  Ozen then identified appellant as the person who robbed him and said again that he was a hundred percent certain.

6

## C. Analysis

Appellant argues the photo array procedure used by Officer Ryans was impermissibly suggestive for a number of reasons. We address each in turn.

First, appellant refers to Officer Ryans and his partner having the array three days prior to presenting it to Ozen and the fact that they knew appellant was in the number five position. There is no evidence in the record that either Officer Ryans or his partner conveyed to Ozen that their suspect was in the number five position. The fact that Officer Ryans had the array before showing it to Ozen is relevant to appellant's next complaint — that Officer Ryans did not use a double-blind identification procedure. Officer Ryans testified that since this case was investigated, guidelines have been implemented to utilize that procedure.[1] However, while such a procedure may be preferable, failure to employ it does not make a pre-trial identification procedure impermissibly suggestive per se. *See Pacheco v. State*, No. 04–06–00453–CR, 2007 WL 1059040, *4 (Tex.App.—San Antonio Apr.11, 2007, pet. ref'd) (mem. op., not designated for publication) (rejecting claim that identification procedure was suggestive because police failed to follow U.S. Department of Justice guidelines that recommend a double-blind presentation of the lineup and a sequential presentation of the photographs). Officer Ryans testified that he in no way suggested to Ozen which person to identify. Ozen's testimony also reflects that no suggestion to pick appellant was made.

Appellant further contends: (1) the only person in the array wearing a black shirt, like the suspect, was appellant, (2) the other five males look younger than appellant, and (3) two of the other males have darker skin than appellant. The

---

[1] According to Officer Ryans, this procedure entails having someone with no knowledge of the case show the photo spread to the witness and admonish them.

array depicts six black males with similar facial features and haircuts. Three of the men have facial hair and four have similar skin color. All six men are dressed in street clothes.

The fact that appellant is wearing apparel similar to the suspect is not impermissibly suggestive. *See Harris v. State*, 827 S.W.2d 949, 960 (Tex. Crim. App. 1992), *abrogated on other grounds by Cockrell v. State*, 933 S.W.2d 73, 88 (Tex. Crim. App. 1996); *Hopkins v. State*, No. 14–07–00531–CR, 2009 WL 508379, at *4 (Tex.App.—Houston [14th Dist.] Mar. 3, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding photo array not impermissibly suggestive when it depicted defendant wearing white muscle shirt like one suspect was described wearing); *Hudson v. State*, No. 14–07–00888–CR, 2009 WL 196060, at *5 (Tex.App.—Houston [14th Dist.] Jan. 29, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding photo array not impermissibly suggestive when it depicted defendant wearing dark-colored hooded sweatshirt similar to those worn by robbers).

Officer Ryans testified that all six of the men look close in age and the photos do not support appellant's claim that the other men appear "much younger." While two of the men have darker skin, four do not and variations of skin color do not render an array impermissibly suggestive. *See Buxton*, 699 S.W.2d at 216; *see also Clay v. State,* 702 S.W.2d 747, 749 (Tex. App.—San Antonio 1985, pet. ref'd) (stating that even if the photos of others had different shades of the same skin color as defendant, that fact would not by itself render the lineup impermissibly suggestive).

Appellant asserts Officer Ryans reinforced Ozen's choice by saying, "Okay." Ozen's testimony does not reflect that he perceived Officer Ryans'

statement as reinforcing his selection. Ozen's reply was, "That's him. I know it's him."

Next, appellant points to the fact Ozen was shown two arrays before he picked appellant out of the third one and that Ozen had seen the third array twice before trial. Appellant's photo was not in the first two arrays and Ozen selected no one. The fact that Ozen saw the third array twice *after* he picked appellant out of the array is not evidence of an impermissibly suggestive procedure.

Last, appellant refers to the fact that Ozen admitted he looked at the person robbing him for "less than a second." Ozen repeatedly testified that he was one hundred percent certain it was appellant.

Based on our review of the photo array in evidence and the testimony of the witnesses, we conclude that appellant has failed to demonstrate that the photo array or the pre-trial identification procedure was impermissibly suggestive. Therefore, we need not consider whether the procedure gave rise to a very substantial likelihood of irreparable misidentification. *See Barley,* 906 S.W.2d at 33. *See also Aker v. State*, 14-12-00468-CR, 2013 WL 5346423, *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2013, pet. ref'd) (mem. op., not designated for publication). We overrule appellant's first issue.

### III.    INEFFECTIVE ASSISTANCE

In his second issue, appellant argues trial counsel provided ineffective assistance during the punishment phase of trial by failing to introduce any mitigating evidence. Although a motion for new trial was filed that alleges ineffective assistance of counsel, the basis for that claim is not set forth in the motion, no affidavits were filed, and no hearing was held.

9

We apply the same two-prong *Strickland* standard of review for ineffective assistance of counsel claims in both the guilt/innocence phase of trial and the punishment phase of trial. *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999). First, the appellant must demonstrate counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). Counsel's competence is presumed, and the appellant must rebut this presumption by identifying the acts or omissions of counsel that are alleged as ineffective and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland*, 928 S.W.2d at 500.

The record does not demonstrate whether or not counsel investigated potential mitigating evidence. Further, the record does not reflect what, if any, mitigating evidence existed at the time. Appellant claims that witnesses who testified on his behalf at the guilt/innocence phase of trial would have provided favorable mitigating testimony at the punishment phase. However, appellant makes no reference to where this claim is supported by the record.

We therefore conclude appellant's reliance upon *Moore v. State*, 983 S.W.2d 15, 23–24 (Tex. App.—Houston [14th Dist.] 1998, no pet.), and *Milburn v. State*, 15 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd), is misplaced. In *Moore*, an affidavit was filed attesting to mitigating evidence and stating that witnesses were available to testify to that evidence. *Moore*, 983 S.W.2d at 23. Trial counsel filed an affidavit admitting that he failed to investigate and that his failure was not based on any trial strategy. *Id.* In *Milburn*, at the hearing on the motion for new trial, the parties stipulated to mitigating evidence

that would have been offered by appellant's relatives and friends. Trial counsel admitted that he failed to investigate or evaluate available punishment evidence. Unlike *Moore* and *Milburn*, our record does not demonstrate that trial counsel failed to investigate or that any witnesses could have provided mitigating evidence.

The decision whether to present witnesses is largely a matter of trial strategy. *See Rodd v. State*, 886 S.W.2d 381, 384 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). An attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant. *See Weisinger v. State*, 775 S.W.2d 424, 427 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd) (holding that it is trial counsel's prerogative, as a matter of trial strategy to decide which witnesses to call). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

In the present case, the record is silent as to whether trial counsel made an investigation into potential witnesses and fails to reflect that any mitigating evidence even existed. Accordingly, on this record, we cannot say trial counsel's failure to present such evidence fell below an objective standard of reasonableness under prevailing professional norms. Appellant's second issue is overruled.

11

## IV. CONCLUSION

Having overruled all of appellant's issues, the judgment of the trial court is affirmed.

/s/    John Donovan
       Justice

Panel consists of Justices McCally, Busby, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).